IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LORETTA J. WAHL**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action 10-0010 |
| **DAVID N. WECHT, COURT OF COMMON** | ) |
| **PLEAS OF ALLEGHENY COUNTY** | ) |
| **PENNSYLVANIA**, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

**CONTI,** District Judge**.**

### I. Introduction

Pending before the court is a motion to dismiss (the "Motion") (Docket No. 6) filed by defendants David N. Wecht ("Judge Wecht"), and the Court of Common Pleas of Allegheny County, Pennsylvania, ("Court of Common Pleas" and together with Judge Wecht, "defendants"). The Motion seeks to dismiss the complaint ("Complaint") (Docket No. 1) filed by plaintiff Loretta J. Wahl ("Wahl" or "plaintiff"), on January 5, 2010. In the Complaint Wahl alleges defendants violated her rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq*. ("ADA"), and seeks injunctive relief to secure those rights in future court proceedings. Defendants set forth five theories for dismissal. Two theories are jurisdictional in nature: the Rooker-Feldman doctrine, and Younger abstention. Two theories are based on a failure to state a claim upon which a relief can be granted: there is no individual liability under the ADA, and plaintiff failed to plead sufficient factual allegations to show she has a plausible claim for relief. Defendants also argue that plaintiff failed to number her paragraphs as required by Federal Rule of Civil Procedure 10(b). After careful examination of the pleadings and for the

reasons set forth below, this court will dismiss the Complaint with respect to any claim against Judge Wecht in his individual capacity and will dismiss the Complaint in all other aspects without prejudice for failure to state a claim.

## II.  Background

Wahl filed her Complaint against defendants asserting that she was being denied accommodations by the Court of Common Pleas for her disability by Judge Wecht and the Court of Common Pleas in violation of the ADA.  Underlying plaintiff's action in the Court of Common Pleas is an ongoing custody dispute between Wahl and the father of her children. Plaintiff sought to establish Pennsylvania as the children's home state.[1]  Plaintiff claims to have a disability which adversely impacts her "cognitive ability to fully participate in proceedings conducted within the confines of Defendant COURT OF COMMON PLEAS OF ALLEGHENY COUNTY PENNSYLVANIA unless certain accommodations are provided."  (Compl. at 5.)[2] Plaintiff claims this disability requires telephonic and electronic communication as an accommodation in lieu of physical court appearances.  (Id.)  In support of her claim, plaintiff attached to the Complaint the sworn declaration of Karin Huffer, M.S., M.F.T.  (Compl., Ex. A.) In the affidavit, Ms. Huffer averred "Dr. Wahl qualifies for accommodations under the ADA as was confirmed by Santa Clara County in [sic] California ADA Administrator."  (Id. ¶ 4)

Plaintiff contends that the "Court of Common Pleas of Allegheny County Pennsylvania, which houses and allows Defendant David N. Wecht to operate as an administrator, is a public entity under the ADA."  (Compl. at 5.)  Plaintiff contends that defendants are required to

---

[1] See Wahl v. George, Civil Action No. 09-1078, 2010 WL 3039173 (W.D. Pa. July 30, 2010).  Home state is defined in the Parental Kidnapping Prevention Act, 28 U.S.C. §1738A(b)(4).

[2] The Complaint does not contain numbered paragraphs.  In order to refer to the allegations in the Complaint, the court must cite to page numbers of the Complaint.

acknowledge that plaintiff is a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2). (Id.) Plaintiff alleges that she made several efforts to apply for the specific accommodations that she seeks, but to little avail. (Id. at 7.)

Plaintiff claims she first applied for ADA accommodations on July 30, 2009. (Id. at 8.) She alleges that Judge Wecht failed to provide her requested accommodations for the proceedings scheduled on September 29, 2009 and November 2, 2009. (Id. at 5.)

An administrator with the court of common pleas, Raymond Billotte ("Billotte"), granted plaintiff the ability to appear via telephone for the November 2, 2009 proceedings.[3]  (need cite) Plaintiff alleges that Billotte's actions angered Judge Wecht, and that Judge Wecht insulted her and cut off the phone connection, which prevented plaintiff from explaining pertinent information regarding the issues for which the hearing was being held. (Id. at 6.) Plaintiff subsequently submitted two applications requesting accommodations to be provided for the hearings scheduled for December 16, 2009 and January 5, 2010. (Id. at 7.) Plaintiff alleges that because the Court of Common Pleas failed to grant her the requested accommodations, she was unable to appear for the scheduled hearings.[4]

On March 17, 2010, plaintiff filed a petition to disqualify Judge Wecht. (Ct. Com. Pleas Docket No. 37). On April 23, 2010, Judge Wecht issued an opinion and order denying that petition. (Ct. Com. Please No. 06-9228-00, Document No. 36 ). In the opinion Judge Wecht reviewed the background of plaintiff's appearance before him. (Op. dated Apr. 23, 2010, Ct. Com. Pleas No. FD 06-9228-003, Document No. 36). Judge Wecht noted:

---

[3] These proceedings refer to the case at FD-06-009228 in the Allegheny County Court of Common Pleas, Pennsylvania.

[4] Wahl's failure to appear because of alleged inadequate ADA accommodations resulted in sanctions against her, in the amount of $1,500.00. (See FD-06-009228, Ct. Com. Pl. Allegheny County, Pennsylvania, Docket Nos. 28, 32.) Plaintiff is not challenging the sanctions in this case.

[I]n August 2009, a non-lawyer "advocate" working for Mother[5] began approaching various members of the court staff to indicate that Mother wanted some accommodations(s) under the Americans with Disabilities Act, 42 U.S.C. A. §§ 1210 et seq. ["ADA"]. On her accommodation request submitted to Court administration, Mother alleged that she was disabled by "legal abuse syndrome." In the meantime, Mother filed several papers with the Department of Court Records, but never presented them in this Court. These filings included a Petition for Custody Contempt (August 3, 2009), a second Petition for Custody Contempt (August 9, 2009), and a praecipe for a hearing to contest the registration of a foreign order (August 26, 2009). On August 19, 2009, court administration informed Mother that she was not entitled to a hearing on her ADA request. Also on August 19, Mother's then-attorney presented a Petition for Leave to Withdraw. No one appeared to oppose, and this Court granted the Petition.

. . . .

On October 27, 2009, court administration advised this Court that it was requesting that Mother be allowed to present a motion via telephone on November 2, 2009, although court administration was not granting specific ADA accommodations for Mother. Although advance leave of Court is required prior to presentation of argument or testimony by telephone, this Court consented to the request, in deference to court administration. Accordingly on November 2, 2009, Mother presented, via telephone, a "Supplemental Application to Petitioner's Previous Application for Hearing Date Pursuant to 23 Pa. C.S.A. 5445(d)." Father's attorney appeared. After argument, Mother's "supplemental application," which sought generally to contest registration of California orders, was denied.

Mother (or someone on her behalf) signed up to present another motion on December 16, 2009. However, on December 6, 2009, Mother informed this Court by fax that she was withdrawing her motion because court administration had granted her ADA accommodation request. Mother then scheduled herself to present a Motion for Reconsideration on January 5, 2010. However, Mother failed to attend the Motions session, although Father's attorney did. The motion was denied.

Id. at 2-4.

Judge Wecht was aware of this federal action and commented:

> The gravamen of Mother's federal complaint appears to be that ADA accommodations were not provided to her. This Court played no role in determining Mother's ADA request as that decision is made by court administration.

Id. at 5-6.

---

[5] Wahl is referred to as "Mother" in the August 23, 2010 opinion.

In denying the petition Judge Wecht expressed concern that this federal lawsuit was filed in an attempt to create a reason to disqualify him. He found that the judicial system would be adversely impacted if such a tactic were to succeed. He noted that there was no current litigation pending before him and if future litigation ensued he would be able to "hear and dispose of such litigation without bias or prejudice if and when [Wahl] returns to this Court." (Id. 8). Plaintiff appealed the April 23, 2010 order to the Pennsylvania Superior Court (Ct. Com. Pleas, FD-06-009228, Document No. 38). On May 27, 2010, the appeal was quashed, *sua sponte*. (Ct. Com. Pleas, FD-06-009228, Document No. 43.)

Wahl claims she was discriminated against by defendants based upon her disability, and that as a result, she was not afforded access to the court – in direct violation of her ADA rights.

Plaintiff requests that this court:

> order that defendants must immediately and forthwith are to permanently provide the plaintiff with the reasonable ADA accommodations, including but not limited to, prompt, definitive, respectful communications via telephonic appearances and communications, electronic and/or facsimile filings, automatic recordings and prompt transcriptions of any and all proceedings as well as any other needed remedy to permit full participation in any/all legal proceedings, hearing, communications, conferences, as well as adequate advocacy/support as needed for full participation.

(Id. at 9.)

Defendants jointly filed the Motion, arguing that this court lacks subject-matter jurisdiction under the Rooker-Feldman doctrine. In the alternative, defendants claim plaintiff's Complaint should be dismissed under the Younger abstention doctrine. If this court possesses subject-matter jurisdiction, defendants argue that plaintiff's complaint should be dismissed

pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, the court determines that the Motion, to the extent it seeks dismissal for lack of subject-matter jurisdiction over plaintiff's claims or for this court to abstain, cannot be granted on either of those bases. The claim against Judge Wecht in his individual capacity will be dismissed with prejudice and the remaining claims will be dismissed without prejudice for failure to state a claim.

### III. Standard of Review

A. Subject-Matter Jurisdiction

As a threshold matter this court must inquire whether it has subject-matter jurisdiction. In re Orthopedic "Bone Screw" Prods. Liab. Litig. 132 F.3d 152, 155 (3d Cir. 1997) (citing Underwood v. Maloney, 256 F.2d 334 (3d Cir.), cert. denied, 358 U.S. 864 (1958); Employers Ins. of Wausau v. Crown Cork & Seal Co., Inc. 905 F.2d 42, 45 (3d Cir. 1990) (" It is an elementary principle that federal courts are courts of limited jurisdiction, empowered to hear cases only as provided for under Article III of the Constitution and congressional enactments pursuant thereto.") (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986)). Consequently, "[a] federal court is bound to consider its own jurisdiction preliminary to consideration of the merits." Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Phila, 657 F.2d 29, 36 (3d Cir. 1981)(citing American Fire & Cas. Co. v. Finn, 341 U.S. 6, 71 (1951)).

The burden of establishing subject-matter jurisdiction in the district court lies with the party seeking to invoke the court's jurisdiction. KVOS, Inc. v. Associated Press, 299 U.S. 269,

278 (1936); see Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc., 227 F.3d 62, 69 (3d Cir. 2000); see also Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). If the court's subject-matter jurisdiction is challenged based upon the sufficiency of the pleading's allegations, i.e., there is a "facial" attack on the pleading, the allegations in the complaint are taken as true and construed in a light most favorable to the complainant. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (case dismissed upon facial attack on complaint, without consideration of extrinsic evidence); Cedars-Sinai Med. Center v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993); 2A JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.30[4], at 12-45 to 46 (2010).

    B.  Failure to State a Claim

A motion to dismiss tests the legal sufficiency of the complaint. Kost v.Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits. Rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") motion to dismiss, a complaint must provide more than labels and conclusions. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007). A "formulaic recitation of the elements of a cause of action will not do." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Factual allegations must be enough to raise a right to relief above the speculative level, and must be sufficient to state a claim for relief that is plausible on its face. Id.

> A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Twombly] at 556, 127 S.Ct. 1955. The plausibility standard is akin to a "probability requirement" but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557, 127 S.Ct. 1955 (brackets omitted).

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Two working principles underlie Twombly. Id. at 1949-50. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a claim's elements, supported by mere conclusory statements. Id. Second, determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 1950 (citing FED. R. CIV. P. 8(a)(2)).

A court considering a motion to dismiss may begin by identifying allegations that are mere conclusions and not entitled to the assumption of truth.

> While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id.

While this court is mindful that pro se plaintiffs are not held to as high a standard as litigants that are represented by counsel, a pro se plaintiff must still plead the essential elements of his or her claim and is not excused from conforming to the standard rules of civil procedure.

8

McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel . . . ."); Haines v. Kerner, 404 U.S. 519, 520 (1972). Thus, plaintiffs, even though they are pro se, must set forth sufficient information that would allow the court to infer that, accepting plaintiffs' allegations as true, defendants violated plaintiffs' federal rights. Kost, 1 F.3d at 183.

## IV.  Discussion

Each of defendants' arguments will be addressed.

A. <u>Subject-Matter Jurisdiction</u>

  1) <u>Applicability of the Rooker –Feldman doctrine</u>

   a.  General

Defendants argue the court lacks subject-matter jurisdiction based upon the allegations in the Complaint. That argument presents a facial challenge to the court's subject-matter jurisdiction and the court is not required to review evidence extrinsic to the pleadings, except matters of which the court may take judicial notice. See Anspach v. City of Phila., 503 F.3d 256, 273 n.11 (3d Cir. 2007) (court may take judicial notice of public records when ruling on Rule 12(b)(6) motions to dismiss); Pinewood Estates of Mich. v. Barnegat Twp. Leveling Bd., 898 F. 2d 347, 349-50 n.4 (3d Cir. 1990) (proper to treat facial attack under Rule 12(b)(1) under standards applicable to Rule 12(b)(6) motions to dismiss), <u>abrogated on other grounds by</u> Yee v. City of Escondito, Cal., 503 U.S. 519, 526 (1992); Schamerhorn v. United States Dep't of Army, Civ. A. No. 01-914, 2009 WL 774967, at *2 (W.D. La. Mar. 23, 2009) (A facial attack under Rule 12(b)(1) "is treated similarly to motion under Fed. R. Civ. P 12(b)(6).").

9

b. <u>Rooker-Feldman</u> doctrine -- framework

Under the <u>Rooker-Feldman</u> doctrine, federal district courts lack subject-matter jurisdiction to review a state court's final decision in certain instances. <u>Great W. Mining & Mineral Co. v. Fox Rothschild LLP</u>, Civ. No. 09-3189, 2010 WL 3035466, at *9 (3d Cir. Aug. 5, 2010). The doctrine is named for two Supreme Court decisions – <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923), and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983).

The Supreme Court discussed the <u>Rooker-Feldman</u> doctrine in <u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u>, 544 U.S. 280, 125 (2005), and held that doctrine

> is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

<u>Exxon Mobil</u>, 544 U.S. at 284 (quoted in <u>Great W. Mining</u>, 2010 WL 3035466, at *9). In <u>Exxon Mobil,</u> the court referenced the narrow scope of the <u>Rooker-Feldman</u> doctrine, noting that previously the doctrine has "been construed to extend far beyond the contours of the <u>Rooker</u> and <u>Feldman</u> cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law." <u>Id.</u>, 544 U.S. at 283.

Prior to <u>Exxon Mobil</u>, courts applying the <u>Rooker-Feldman</u> doctrine focused on whether the state and federal suits at issue were "inextricably intertwined." <u>Great W. Mining</u>, 2010 WL 3035466, at *20 (citing <u>Gary v. Braddock Cemetery</u>, 517 F.3d 195, 200 n.5 (3d Cir. 2008)). The phrase "inextricably intertwined" was relied upon extensively by lower courts, resulting in an application of <u>Rooker-Feldman</u> that was too broad. <u>Id.</u> That phrase was introduced by the

10

Supreme Court in Feldman, but it "does not create an additional legal test or expand the scope" of the doctrine. Id. The Court in Exxon Mobil deliberately chose not to rely on the "inextricably intertwined" formulation. Id. (citing McCormick v. Braverman, 451 F.3d 382, 394 (6th Cir. 2006) ("In Exxon, the Supreme Court implicitly repudiated the circuits' post-Feldman use of the phrase 'inextricably intertwined' to extend Rooker-Feldman to situations where the source of the injury was not the state court judgment.")). "[I]inextricably intertwined" as a phrase does not have "independent content" since it is descriptive and is simply a "label attached to claims that meet the requirements outlined in Exxon Mobil." Id. at *9 (quoting Hoblock, 422 F.3d at 87).

The Court of Appeals for the Third Circuit in Great Western Mining delineated four specific requirements necessary for the application of the Rooker-Feldman doctrine. The requirements are: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." Great W. Mining, 2010 WL 3035466 at *14 (citing Exxon Mobil, 544 U.S. at 284). The second and fourth requirements are the most critical in determining the applicability of the Rooker-Feldman doctrine. Id. In paying particular attention to the second requirement, the court indicated that the concept of complaining about injuries caused by a state-court judgment "may also be thought of as an inquiry into the source of the plaintiff's injury." Id. (citing Turner v. Crawford Square Apts. III, L.P., 449 F.3d 542, 547 (3d Cir. 2006)). The court of appeals gave an example of a case which would be barred by the Rooker-Feldman doctrine because the state-court judgment was the source of the injury:

11

> "Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal."

Great W. Mining, 2010 WL 3035466, at *7 (quoting Hoblock, 422 F.3d at 87). When the source of the injury is the defendant's actions instead of the state court's judgment, however, the federal suit is not barred. The court of appeals provided an example of that situation:

> "Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging *injury based on the employer's discrimination*. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by Rooker-Feldman, of the state-court judgment."

Id. (quoting Hoblock, 422 F.3d at 87-88) (emphasis added). The critical task is to determine whether a federal suit complaining of an injury by a third party is actually complaining about an injury "produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." Id. (quoting Hoblock, 422 F.3d at 88).

      c.    Application of the Rooker-Feldman doctrine to the instant matter

Defendants argue that plaintiff is complaining about injuries caused by the state court proceedings, which concluded before this federal action was filed – thereby implicating the applicability of the Rooker-Feldman doctrine. Plaintiff contends that she is not complaining about the custody matters, instead she is complaining about the need for ADA accommodations in future proceedings. See Centifanti v. Nix, 865 F.2d 1411, 1429-30 (3d Cir. 1989)(a plaintiff

sought injunction for prospective relief to correct due process problems in future cases, which was not barred by Rooker-Feldman doctrine because the plaintiff did not retrospectively challenge a state court decision).

The nature of the issue raised here appears to fall within the second category described by the court of appeals, i.e., the cause of the injury is defendants' actions – not a state-court judgment. Here, the alleged injury is the need for ADA accommodations. The court could discern no judgment entered by the state court concerning that issue. To the contrary, the state trial court noted that the "Court played no role in determining [Wahl's] ADA request as that decision is made by court administration."  (Op. dated Apr. 23, 2010 at 5-6, Ct. Com. Please No. FD 06-9228-003, Document No. 36.)

Other than statements that ADA accommodations were denied, the court has no documents or information before it concerning the ADA proceedings before the court administrator. This court cannot determine on the record before it whether the second and third requirements – relating to the existence of a state-court judgment – for the application of the Rooker-Feldman doctrine are met in this case. Great W. Mining, 2010 WL 3035466, at *14. Under those circumstances the court cannot grant the Motion to the extent it seeks dismissal for lack of subject-matter jurisdiction, but this holding is made without prejudice. If Wahl files an amended complaint, defendants may reassert that subject-matter jurisdiction is lacking and present information about the ADA proceedings in state court.

2. Younger Abstention

Defendants argue the court should abstain from exercising jurisdiction under Younger v. Harris, 401 U.S. 37 (1971).

a.  Younger abstention requirements

"[F]ederal courts must abstain in certain circumstances from exercising jurisdiction over a claim where resolution of that claim would interfere with an ongoing state proceeding." Miller v. Mitchell, 598 F.3d 139, 145 (3d Cir. 2010). Younger abstention is appropriate when the following requirements are met: (1) the state proceedings are judicial in nature, (2) the proceedings implicate important state interests, and (3) the federal plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges. See Middlesex County Ethics Comm. v. Garden State Bar Assoc., 457 U.S. 423, 432 (1982); FOCUS v. Allegheny Cnty. Ct. Com. Pl., 75 F.3d 834, 843 (3d Cir. 1996).

b.  Application of Younger abstention requirements

Defendant argues, among other things, that the ongoing custody disputes in state court implicate important state interests, warranting abstention by this court. Plaintiff disagrees and asserts she is not seeking to interfere with the custody proceedings; she is seeking ADA accommodations in future proceedings. Custody disputes pending in state court are generally matters which will trigger Younger abstention. Lazaridis v. Wehmer, 591 F.3d 666, 671 (3d Cir. 21010) (in custody dispute held Younger abstention was appropriate due, inter alia, to important state interests). Here, the ADA issues are not matters of unique state concern. Congress has enacted legislation addressing this interest. It is problematic to determine on the record before the court whether the state ADA proceedings in state court are ongoing and are judicial in nature. There is no information before this court to enable the court to determine whether the proceedings before the court administrator are judicial in nature. See White v. James, No. 07cv120, 2007 WL 1006896, at *4 (W.D. Pa. Mar. 30, 2007)(Younger abstention held appropriate while there were ongoing criminal proceedings and ADA claims were

repeatedly raised in those proceedings; state court was addressing the ADA claims and appeared "to be working with plaintiff in good faith in an attempt to reasonably accommodate his requests."). Under those circumstances, the court will decline to abstain at this time. If Wahl files an amended complaint, the court will reconsider this issue on a more developed record.

B. Failure to State Claims

1. Claim against Judge Wecht in his individual capacity

There is no individual liability under the ADA. See Koslow v. Pennsylvania, 302 F.3d 161, 178 (3d Cir. 2002); see also Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002) (commented favorably on decisions which found "that individuals are not liable under Title I and II of the ADA"). To the extent Wahl is asserting a claim against Judge Wecht in his individual capacity that claim must be dismissed. A claim for prospective injunctive relief against Judge Wecht in his official capacity, however, is not barred. In Koslow, the court of appeals recognized that while state officials cannot be sued in their individual capacities, ADA suits for prospective injunctive relief against state officials are not barred. Koslow, 302 F.3d at 178-79.

2. Other claims under the ADA

Under Title II of the ADA, an individual may assert a claim against a state or its employees for violation of the right of access to the courts. Tennessee v. Lane, 541 U.S. 509, 533-34 (2004). The Supreme Court recognized:

> The unequal treatment of disabled persons in the administration of judicial services has a long history, and has persisted despite several legislative efforts to remedy the problem of disability discrimination.

Id. at 531.

The Court of Appeals for the Third Circuit set forth the elements of a claim under Title II of the ADA in Bowers v. National Collegiate Athletic Association, 475 F.3d 524 (3d Cir. 2007).

> To succeed on a claim under Title II, [the plaintiff] must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.

Id. at 553 n.32.

In the Complaint, Wahl makes conclusory allegations that she has a disability. The affidavit submitted by Ms. Hupper is also conclusory, i.e., "Dr. Wahl qualifies for accommodations under the ADA . . . ." (Compl. Ex. A. ¶ 4). Those conclusions are insufficient for this court to determine whether Wahl has a plausible claim. Ashcroft, 129 S.Ct. at 1949. Wahl, although pro se, must do more than merely allege she has a disability which adversely impacts her "cognitive ability to fully participate in proceedings . . . ." (Compl. at 5.) The Complaint needs factual allegations to show there is a plausible ADA claim. The Complaint must be dismissed without prejudice. Wahl will be afforded an opportunity to amend the Complaint.

  3. Failure to comply with Federal Rule of Civil Procedure 10(b)

Federal Rule of Civil Procedure 10(b) provides:

**b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense.

Plaintiff failed to comply with Rule 10 and even if the Complaint was not dismissed on other grounds, the court could dismiss the Complaint and require her to amend the Complaint to comply with Rule 10(b). See Scott v. Twp. of Bristol, Civ. Action No. 90-1412, 1990 U.S. Dist. LEXIS 15313, at *11 ("Where a complaint fails to comply with the requirements of Rule 10(b), dismissal of the action is within the discretion of the court."). If plaintiff files an amended complaint as permitted by this opinion, she must state her claims in numbered paragraphs or the amended complaint will be dismissed.

### V. Conclusion

For the reasons stated above, any claims against Judge Wecht in his individual capacity will be dismissed with prejudice and all remaining claims will be dismissed without prejudice.

### VI. Order

**AND NOW**, this 21st day of September 2010, upon consideration of the motion to dismiss plaintiff's complaint (Docket No. 6) filed by defendants Judge Wecht and the Allegheny County Court of Common Pleas,

**IT IS HEREBY ORDERED** that the motion is **GRANTED**. Any claim against Judge Wecht in his individual capacity is dismissed with prejudice and all remaining claims are dismissed without prejudice.

**IT IS FURTHER ORDERED** that plaintiff shall have **thirty (30) days** from the date of the entry of this order to file an amended complaint making curative amendments; provided that

plaintiff can meet the standards of Rules 8 and 10(b) of the Federal Rules of Civil Procedure. If plaintiff files an amended complaint, she must state her claims in numbered paragraphs and must allege facts sufficient to outline the elements of her claims or to permit inferences to be drawn that these elements exist and may not rely upon mere bald assertions or legal conclusions. Plaintiff is reminded of the requirements of Rule 11 of the Federal Rules of Civil Procedure.

By the court,

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

cc: Loretta J. Wahl
107 Park View Drive
Sewickley Hills, PA 15143